Filed 8/9/22  In re L.D. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re L.D. et al., Persons Coming Under the Juvenile Court Law. | D080150 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. EJ4459A-C) |
| Plaintiff and Respondent, |  |
| v. |  |
| J.S. et al., |  |
| Defendants and Appellants. |  |

APPEAL from an order of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Conditionally reversed and remanded with directions.

Richard Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant J.S., Father.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant L.S., Mother.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant J.S. (Father) appeals from the juvenile court's orders terminating his parental rights over his sons J.L.E.S. and J.A.E.S. Defendant and appellant L.S. (Mother) appeals from the juvenile court's orders terminating her parental rights over J.L.E.S., J.A.E.S., and L.D.[1]

Father's only contention on appeal is that substantial evidence does not support the juvenile court's finding that the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) did not apply to the proceedings. Mother joins in Father's arguments. Plaintiff and respondent San Diego County Health and Human Services Agency (Agency) concedes in a letter brief that a conditional reversal and a limited remand is appropriate to ensure ICWA compliance. The parties have stipulated to the immediate issuance of remittitur. We accept the Agency's concession, conditionally reverse the judgment, and remand for compliance with ICWA.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The Agency initiated these dependency proceedings under Welfare and Institutions Code section 300 subdivision (b)(1)[3] on behalf of J.L.E.S., J.A.E.S., and L.D. (collectively referred to as the children) in September 2019,

---

[1] L.D.'s presumed father, C.D. is not a party to this appeal.

[2] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issue on appeal.

[3] All further section references are to the Welfare and Institutions Code unless otherwise indicated.

2

alleging there was a substantial risk the children would suffer serious physical harm or illness based on Mother's failure to provide adequate supervision or protection. The agency alleged Mother was fearful of Father because he appeared to be under the influence of drugs, but she nonetheless allowed him to sleep in the home with the children. J.S. took J.A.E.S., who was three years old at the time, from the home, stole a vehicle, and drove erratically with J.A.E.S. unrestrained in the stolen vehicle. Father was arrested and admitted methamphetamine use. The Agency further alleged Mother and Father have a violent and volatile history, including Father choking Mother in the presence of J.A.E.S. in July 2016, and Father lighting himself on fire in front of Mother and one of the children, then threatening to kill Mother and the children in October 2018. The Agency alleged Mother has a history of allowing Father back into the home despite the danger he presents to the children. Mother and Father failed to progress in services, and the court terminated parental rights in March 2022.

In its September 23, 2019 detention report, the Agency reported that Father denied any Indian ancestry. Father also completed an ICWA-020 Parental Notification of Indian Status form stating he had no Indian ancestry.

C.D., L.D.'s presumed father, also completed an ICWA-020 form stating he had no Indian ancestry. However, in its detention report, the Agency reported that C.D. claimed Mother is "Blacktoe" and half Apache.

The Agency also reported that Mother stated she had Cherokee ancestry. Mother then completed an ICWA-020 form on September 25, 2019, claiming Santa Ysabel and Barona ancestry. She completed a second ICWA-020 form on October 29, 2019, claiming Cherokee and Santa Ysabel Indian ancestry.

3

In its addendum report dated November 13, 2019, the Agency reported that maternal grandmother stated Mother was mistaken about her Indian ancestry. According to maternal grandmother, Mother's family was not Santa Ysabel or Barona, and Mother may have thought they were because they attended the Santa Ysabel church when Mother was a child and maternal grandfather and maternal uncle helped to build the church. Maternal grandmother claimed that they may have Cherokee, Blackfeet, and Taino ancestry based on a DNA test that her brother (maternal granduncle) completed. She also stated their Indian ancestry originated from Chihuahua, Mexico.

The Agency spoke to maternal grandmother's brother's wife (maternal grandaunt-in-law), who stated her husband's (maternal granduncle) DNA test results indicated he is 23 percent Cherokee and Taino Indian combined, but denied any Blackfeet ancestry. She stated Taino is a tribe originating from Puerto Rico, but their ancestors originate from Chihuahua, Mexico.

In sum, the tribes that arose during the Agency's inquiries were Blackfeet, Apache, Cherokee, Santa Ysabel, Barona, and Taino. There are three recognized Cherokee tribes: United Keetoowah Band of Cherokee Indians in Oklahoma (United Keetoowah Band), Eastern Band of Cherokee Indians (Eastern Band), and Cherokee Nation. (See Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 86 Fed.Reg. 7554 (Jan. 29, 2021).)

On October 24, 2019, the Agency spoke with a representative of the Barona tribe, who indicated neither Mother nor maternal grandfather are in their system. However, the representative stated the Agency must formally notice the Barona tribe.

4

The Agency called the Santa Ysabel tribe on October 24, 2019 and October 30, 2019 with no answer.

On October 30, 2019, the Agency spoke with someone from Indian Health Counsel, who stated that she spoke with representatives from both Barona and Santa Ysabel and that the representatives could find no connection with the children.

On November 6, 2019, the Agency sent an inquiry email to the Blackfeet tribe. On November 8, 2019, the Blackfeet tribe stated they only reply to written letters sent by certified mail. The Agency mailed an ICWA letter by certified mail that same day. The parties do not contend, and we have found nothing in the record reflecting any responses from or further communications with the Blackfeet tribe.

The Agency also sent inquiry emails to the three Cherokee tribes, on November 6, 2019.

Cherokee Nation requested names and dates of birth for the children and biological parents to respond to the inquiry. The Agency sent the requested information via fax. That same day, November 6, 2019, Cherokee Nation confirmed the names do not appear on the tribal registry as enrolled members.

The United Keetoowah Band requested inquiry in writing by certified mail. That same day, November 6, 2019, the Agency mailed an ICWA inquiry letter via certified mail to this tribe. The parties do not contend, and we have found nothing in the record reflecting any responses from or further communications with the United Keetoowah Band.

On November 25, 2019, the Agency sent an inquiry letter to the Eastern Band by certified mail. On January 27, 2020, the Agency received

response letters from the Eastern Band confirming that the children were not registered nor eligible to register as members of that tribe.

The Agency reported that it submitted an ICWA-030 Notice of Child Custody Proceeding for Indian Child form on October 9, 2019, but did not identify to whom it submitted the form—whether it was to tribes, or family members to fill out, or to one of the Agency's ICWA specialists to process. The forms could not be found in the juvenile court record.

In its February 10, 2020 addendum report, the Agency indicated it was still awaiting a response from the Cherokee and Blackfeet tribes. However, the Agency noted that maternal grandmother and maternal grandaunt-in-law stated that the Indian ancestry originates from Chihuahua, Mexico, which would not be a federally recognized tribe. Additionally, if maternal granduncle was only 23 percent Cherokee and Taino combined, the children would not meet the 25 percent Cherokee certificate degree of Indian blood requirement.

At the pretrial settlement conference on February 10, 2020, the Agency requested that the court making a finding that ICWA does not apply because the Agency inquired with all applicable tribes, which gave rise to no reason to know the children are Indian children. The juvenile court found that ICWA does not apply.

At the contested section 366.26 hearing on March 10, 2022, the juvenile court again found that ICWA does not apply to the proceedings. The court terminated parental rights and this appeal followed.

## DISCUSSION

Father argues substantial evidence does not support the juvenile court's finding that ICWA did not apply to the proceedings. Father contends the Agency's initial inquiry in this case gave rise to a "reason to believe" the

6

children were Indian children, and the Agency failed to comply with the requirements under ICWA and section 224.2. The Agency concedes that the case should be remanded for compliance with ICWA. Accordingly, we conditionally reverse the judgment and remand for compliance with ICWA and section 224.2.

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*In re D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

After a "reason to believe" that an Indian child is involved has been established, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The duty of further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services for

7

assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting tribes and anyone else that might have information regarding the child's membership or eligibility in a tribe. (*Id.*, subd. (e)(2).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

Father first argues substantial evidence does not support the court's ICWA finding because the Agency's reports do not contain copies of correspondences exchanged with the tribes. The Agency concedes it should have filed the ICWA-030 forms and the inquiry letter it sent to the United Keetoowah Band. The Agency also concedes it should have sent the Barona tribe formal ICWA notice as the Barona tribe requested.

We conclude the Agency was not required to file its communications with the tribes where there was only a "reason to believe" requiring further inquiry, and not a "reason to know" requiring formal notice. (See § 224.2, subd. (e)(2)(C) [when there is a "reason to believe" a child is an Indian child, further inquiry includes contacting tribes by "telephone, facsimile, *or* electronic mail"], italics added; compare with § 224.3, subds. (a)(1), (c) [when there is a "reason to know" a child is an Indian child, formal notice "shall be sent by registered or certified mail with return receipt requested" and "[p]roof of the notice, *including copies of notices sent and all return receipts and responses received, shall be filed with the court*"], italics added.) Because Father does not contend there was a "reason to know" any of the children are Indian children, the Agency was not required to file the contents of the Agency's further inquiry communications with tribes. However, the Agency

8

should have sent the Barona tribe formal notice as requested. (§ 224.2, subd. (e)(2)(C) [when conducting further inquiry, "[c]ontact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination . . . ."].)

Second, Father argues the Agency failed to satisfy its duty to interview all extended family members to gather information to provide to the tribes, but did not specify which family members the Agency failed to interview. The Agency concedes it should have asked maternal grandfather, L.D.'s paternal grandmother, and J.L.E.S.'s and J.A.E.S.'s paternal great-aunt about potential ICWA ancestry.

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

The Agency should have made an ICWA inquiry of maternal grandfather, who testified in court by telephone at one point, and L.D.'s paternal grandmother, who the Agency spoke to on at least one occasion. It is unclear to whom the Agency refers when it concedes that it should have asked J.L.E.S.'s and J.A.E.S.'s paternal great-aunt about potential ICWA ancestry. Nonetheless, the Agency is not required to make an ICWA inquiry of that person because a great-aunt is not someone who qualifies as an extended family member. (See 25 U.S.C. § 1903(2).)

9

Third, Father argues the Agency failed to contact the Taino tribe. The Agency argues the Taino tribe is not federally recognized. The Agency is correct and was therefore not required to contact the Taino tribe. (See 86 Fed.Reg. 7554 (Jan. 29, 2021).)

The Agency added a fourth concession on an issue not raised by Father or Mother. The Agency indicated that it should have asked Mother whether she believed she had Apache ancestry based on L.D.'s father's statement that Mother is half Apache. The Agency was not statutorily required to ask Mother if she had Apache ancestry where the Agency asked Mother about potential Indian ancestry, Mother filled out an ICWA-020 form on two separate occasions, and Mother never claimed Apache ancestry.

## DISPOSITION

The juvenile court's orders terminating parental rights are conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and section 224.2 (and, if applicable, the notice provisions under section 224.3). If, after completing its inquiry, neither the Agency nor the juvenile court has reason to believe or reason to know J.L.E.S., J.A.E.S., and/or L.D. are Indian

children, the order terminating parental rights shall be reinstated. If the Agency or the juvenile court has reason to believe or reason to know J.L.E.S., J.A.E.S., and/or L.D. are Indian children, the juvenile court shall proceed accordingly. Remittitur shall issue immediately.

                                                    HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


BUCHANAN, J.

11